# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL BERKO,** : | No. 3:06cv122 |
| **Plaintiff,** : | |
| : | **(Judge Munley)** |
| **v.** : | |
| : | |
| **SEARS, ROEBUCK AND CO.,** : | |
| **Defendants** : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendant's motion for summary judgment (Doc. 16). Having been fully briefed and argued, the matter is ripe for disposition.

**Background**

Plaintiff began working for defendant as a Product Repair Service Technician on July 27, 1981. (Defendant's Statement of Material Facts (Doc. 18) (hereinafter "Defendant's Statement") at ¶ 2).[1] His work consisted primarily of servicing refrigerators and air conditioners. (Id.). Each morning when plaintiff arrived at work he would receive a daily service route. (Id.). He visited customers to make repairs according to that route, either repairing malfunctioning products or ordering replacement parts. (Id.). The company would ship replacement parts directly to the customer, who would then make an appointment with a technician to install the new part. (Id.).

---

[1] We will cite to this statement only for facts which are undisputed. If the facts are disputed we will note that.

In August 2004, plaintiff purchased a lawn tractor from a Sears store. (Id. at ¶ 3). He purchased the tractor as a "'used return.'" (Id.). The tractor had been used by the previous owner for approximately three and one-half hours and returned to the store for repairs. (Id.). Evidence in the case indicates that even brand-new equipment sometimes required service. (Plaintiff's Counterstatement of Material Facts (Doc. 24) (hereinafter "plaintiff's counterstatement") at ¶ 3; Affidavit of Ronald Pasternak (Ex. C to plaintiff's appendix of exhibits in opposition to plaintiff's motion for summary judgment (Doc. 23) (hereinafter "plaintiff's appendix") at ¶ 8; Deposition of Michael Berko (plaintiff's appendix ex. A) at 194). Less than a month after he purchased the tractor, plaintiff placed a service call to the company, complaining that the tractor was noisy, wobbled and vibrated. (defendant's statement at ¶ 4). Ronald Pasternak, a Sears Lawn and Garden Technician, arrived at plaintiff's property a week later to repair the tractor. (Id. at ¶ 5). Pasternak concluded that the tractor's deck needed to be replaced, and called a supervisor to order the new part. (Id.). Pasternak concluded that the welds on the deck were split and could not be repaired. (Id. at ¶ 6). Plaintiff's tractor was under warranty. (Id.). He therefore received the new deck at no cost. (Id.). At the same time, Pasternak sold plaintiff a "protection agreement" for the tractor, which cost $269.99. (Id. at ¶ 7). Pasternak received a commission for this sale. (Id.).

Pasternak failed to schedule a service appointment to install the new deck. (Id. at ¶ 8). Berko testified that he planned to install the new deck himself, seeking

2

help only if the project became too difficult. (Id.). Five days after the service call, plaintiff injured his shoulder at work. (Berko Dep. at 51). He did not attempt to put the new deck on the mower when it arrived one month later. (Id. at 123). Plaintiff's shoulder injury and the coming winter made doing so seem impossible and unnecessary. (Id. at ). Instead, plaintiff had a neighbor put the new deck behind his garage. (Id. at ).

The service performed by Pasternak to plaintiff's tractor eventually led to two investigations by Sears. The parties disagree about the events that prompted the first of these investigations. Defendant claims that Sears officials began investigating the service to plaintiff's tractor after hearing from other service technicians that plaintiff and Pasternak had made a deal to trade a new tractor deck for the commission on the service agreement plaintiff purchased. Plaintiff denies that he and Pasternak ever spoke before Pasternak arrived to perform service on his tractor. Lacking sufficient information after this initial investigation, defendant decided not to question plaintiff about service to his tractor. (Defendant's statement at ¶ 11).

After testimony in another investigation of improper handling of funds from service calls implicated plaintiff and Pasternak, however, the company began again to investigate plaintiff for dishonesty in the matter of the lawnmower deck. (Id. at ¶¶ 14-16). Raymond Sosa, the company's Territorial Loss Prevention Manager, interviewed Pasternak about allegations of wrongdoing in handling the company's

3

funds and his service to plaintiff's tractor. (Id. at ¶ 18). After this conversation, Sosa telephoned plaintiff, speaking to him for the first time. (Id. at ¶ 20). Sosa asked plaintiff about Pasternak's service to his tractor, and plaintiff admitted that he had received a new deck but still had the old one. (Id. at ¶ 21). Sosa then instructed Terry Vincent, the local Technical Service Manager, to go to plaintiff's home to retrieve the old deck. (Id. at ¶ 22). Vincent discovered that plaintiff had never installed the new deck, which was leaning against the wall of plaintiff's garage. (Id. at ¶ 23). Plaintiff removed the old deck from his tractor, and Vincent returned to Sears with it. (Id.). When Vincent returned to the store, he and a Sears Service Technician examined the deck, finding nothing wrong with it. (Id. at ¶ 24). Another inspection at the District Service Office in Rochester, New York also revealed no damage to the deck. (Id. at ¶ 25).

After this investigation, Sosa telephoned plaintiff to question him about the service to his tractor. (Id. at ¶ 26). Vincent was also on the line, serving as a witness. (Id.). After this call, the company suspended plaintiff with pay in order to complete its investigation and complete termination procedures. (Id. at ¶ 27). The company also suspended Pasternak. (Id.). Sosa forwarded this information to management personnel, and the company's conclusion that the deck was neither damaged or broken and that plaintiff had made inconsistent statements during the investigation led District Manager Kenneth R. Haskell to seek to terminate the plaintiff's employment. (Id. at ¶ 29). The Regional and National Human Resource

Managers reviewed Haskell's determination to terminate plaintiff.  (Id. at ¶ 30).  Kathy Kleban, the company's National Director of Human Resources, concurred in Sears's decision to fire the plaintiff.  (Id. at ¶ 30).  The company fired the plaintiff on June 20, 2005.  (Id. at ¶ 31).  Plaintiff was 49 years old when he lost his job.  (Id. at ¶ 32).

The company did not replace plaintiff after his firing.  (Id. at ¶ 33).  Instead, the company "redistributed" his duties among three other technicians.  (Id.).  One of those technicians was fifty-one years old, one thirty-four and the third thirty-eight.  (Id.).  At the time that plaintiff lost his job, Sears employed twenty-five technicians who reported to Vincent.  (Id. at ¶ 34).  Of those twenty-five, fourteen were age forty or older, and seven were older than the plaintiff.  (Id.)  Of the 172 service technicians employed in the district and working under Haskell, 113 were age forty or older.  (Id.).  The company's service technicians in the district had an average age of 43.3, and 52 of those technicians were older than the plaintiff.  (Id.).

During his deposition, plaintiff cited statements from his technical service manager, Terry Vincent, as evidence of age discrimination.  (Id. at ¶ 36).  Vincent had called him an "'old timer'" and a "'seasoned veteran'" "'a few times'" during service meetings.  (Id.).  On other occasions, Vincent had warned him that aging meant that he would "'have to be more careful not to get injured'" while working to avoid workers' compensation claims.  (Id.).  Vincent had also informed plaintiff in April 2005 that the company had four excess service technicians in the area.  (Id.).

5

Plaintiff had earlier informed Vincent that he would be able to return to work the next month after suffering an injury to his shoulder. (Id.). Plaintiff also testified in his deposition that he had not identified age discrimination as a factor in his employment at the time Vincent made these comments. (Id. at ¶ 37). Plaintiff only found age discrimination in these comments after the company began investigating his receipt of the tractor deck in June 2005. (Id. ¶ at 37). That investigation came well after Vincent made his comments about age. (Id.). Plaintiff also testified that he did not find the comments about his age offensive at the time they were made. (Id. at ¶¶ 39-40). Plaintiff apparently did not report any of these statements to Sears authorities. (Id. at ¶ ¶ 42-43). He also did not allege that Vincent or Sosa made these statements during their investigation of his alleged misconduct in relation to the mower deck. (Id. at ¶ 44).

On January 18, 2006 plaintiff filed his complaint. (See Complaint (hereinafter "Complt." (Doc. 1)). The complaint alleged that Sears violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* by terminating him because of his age. The complaint sought front pay, back pay, costs, attorney's fees and compensatory and liquidated damages. After a discovery period, the defendant filed a motion for summary judgment. The parties briefed the matter and this court held argument on the issue, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant the Age Discrimination in Employment Act,

29 U.S.C. §§ 621, *et seq.*, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by

7

showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

At issue in this case is whether defendant discriminated against plaintiff on the basis of his age. The Age Discrimination in Employment Act prohibits "discrimination against an individual over age 40 with respect to 'compensation, terms, conditions, or privileges of employment, because of an individual's age.'" Billet v. Cigna Corp., 940 F.2d 812, 816 (3d Cir. 1991 (quoting 29 U.S.C. § 623(a)). To recover under the act, "'a plaintiff must prove by a preponderance of the evidence that age was the determinative factor in the employer's decision' at issue." Id. (quoting Bartek v. Urban Redevelopment Authority of Pittsburgh, 882 F.2d 739, 742 (3d Cir. 1989)).

    **a. Direct Evidence of Discrimination**

A plaintiff can prove claims of age discrimination through direct evidence. In such cases, we apply the same Price Waterhouse "direct evidence" test to claims of age discrimination that we do to claims of sex discrimination. See Glanzman, 391 F.3d at 512 (holding that in age discrimination cases, "if direct evidence is used, the proponent of the evidence must satisfy the test laid out in Price Waterhouse in order

8

to prove a violation of the ADEA [citations omitted].). "To be 'direct' for purposes of the Price Waterhouse test, evidence must be sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's age in reaching their decision. [citations omitted] ." Id.  In other words, a plaintiff "must produce evidence of discriminatory attitudes about age that were causally related to the decision to fire her." Id.

Here, plaintiff points to alleged direct evidence of discrimination in statements by supervisors and coworkers that plaintiff was an "old timer" or a "seasoned veteran." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 25) at 10).  Haskell, the district manager, likewise referred to older workers like plaintiff as "old timers." (Id. at 11).  Pasternak testified that he heard Vincent and Haskell describe some workers as "old timers," and issue threats that "old fogies better get with the program or Sears will get rid of you" and that "old timers need to change or conform or Sears will get rid of you." (Id.).  Vincent also warned plaintiff that "'senior'" technicians needed to work carefully because "'as you get older, you become more of a liability as to workers comp cases and to get injured.'" (Id.).

We find that these sorts of statements do not constitute direct evidence of age discrimination.  To constitute direct evidence of discrimination, such "evidence must be sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's age in reaching their decision. [citations omitted] ."

9

Glanzman, 391 F.3d at 512. First, we note that such statements were made over a long period of time, and that plaintiff does not point to any statements he claims were made at or near the time of his termination. Indeed, plaintiff admits that he did not consider the statements to be offensive or evidence of a bias against older workers when he first heard them.

Second, the statements do not constitute evidence by which a reasonable juror could conclude that defendant terminated plaintiff because of his age. These statements merely demonstrate that supervisors at Sears recognized plaintiff's age. The phrases "old timer" and "old fogie" are not, however, necessarily negative descriptions of workers like plaintiff. Such descriptions could be terms of endearment or recognition of the plaintiff's long experience. A reasonable juror could not view such statements as evidence of a desire to terminate the plaintiff because of his age. Similarly, admonitions to careful work for older workers could not be viewed by reasonable jurors as evidence that Sears sought to end plaintiff's employment because of his age; they are better viewed as an attempt to prevent workplace injury. Finally, warnings to workers that they should follow the procedures required by the corporation are not direct evidence of age discrimination, even if the employer claims that older workers are more likely not to follow such procedures. A reasonable juror could not conclude that such statements are evidence of a desire to terminate the plaintiff because of his age; instead, they are evidence of a desire to terminate an "old fogie" for failing to comply with company policy.

10

**b. Burden-Shifting Test**

Lacking direct evidence of discrimination, a plaintiff can still prevail under the ADEA. To do so, a plaintiff must satisfy a burden-shifting test similar to that articulated by the Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must establish a prima facie case by "showing (1) he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination." Armruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 1994).[2] Once the plaintiff establishes this prima facie case, "the defendant has the burden of producing evidence that it had 'a legitimate, nondiscriminatory reason for the discharge.'" Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002). If the defendant produces such evidence, the burden shifts back to the plaintiff, who must provide "evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause

---

[2]We note that the United States Supreme Court has found that the mere fact that an employee was replaced by another person within the protected class does not necessarily mean that a plaintiff cannot make out a prima facie case for age discrimination, since "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." O'Connor, 517 U.S. at 313. We need not address that question here, since the person who received the promotion was outside the protected class.

of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). We will address each of these areas in turn.

Plaintiff argues that he has established a prima facie case of discrimination. The parties agree that plaintiff satisfies the first three parts of the test articulated in Armruster in that plaintiff is older than forty, was qualified for the position he held and was dismissed despite these qualifications. They disagree, however, about whether plaintiff has met the fourth element for a prima facie case, and whether he is even required to meet that fourth prong. Defendant argues that plaintiff's position was eliminated, and he was replaced by no one, meaning that he cannot meet the requirements for a prima facie case. In this case, plaintiff's position was eliminated; a jury could conclude, however, that he was replaced. Three employees took over the work that he had done, and two of those workers were outside the protected class. These facts are sufficient for a juror to infer that plaintiff's age was a motivating factor in replacing him. Plaintiff has met him initial burden in this case.

If plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for the employment decision of which the plaintiff complains. The defendant cites as this legitimate non-discriminatory reason the results of the investigation the company undertook of plaintiff's receipt of a new deck for his lawn tractor. Sears contends that its investigation revealed that plaintiff committed fraud by accepting a new tractor deck when the original deck was not faulty, arranging with Pasternak to receive that deck

through improper procedures and lying about those events during the company investigation. Firing an employee for fraud in obtaining merchandise from the company is a legitimate non-discriminatory reason for the employment decision. Defendant has met its burden.[3]

Because the defendant has established legitimate non-discriminatory reasons for plaintiff's termination, the burden now shifts back to the plaintiff to produce evidence by which a reasonable juror could either "(1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fakete 308 F.3d at 338.

Plaintiff contends that the defendant's articulated reasons are not believable because they are inconsistent. First, plaintiff argues that Sears's assessment that he committed fraud in obtaining his new tractor deck was misplaced, and that Sears officials who testified did not claim that plaintiff had committed any fraud in obtaining the device. Any claim that plaintiff would risk his job by lying about the condition of his law tractor so that he could pay $269.99 for a service agreement and allow Pasternak to obtain a $16 commission is preposterous, plaintiff contends. Plaintiff also contends that he was never inconsistent in his responses to the defendant's inquiries in the matter. Moreover, plaintiff insists that Sears knew or "acted in blatant

---

[3] Plaintiff apparently does not dispute that these reasons could constitute legitimate, non-discriminatory ones. Instead, the plaintiff challenges defendant's claims that these legitimate reasons motivated its decision to terminate plaintiff.

disregard for facts" which would have demonstrated that the company had no reason to punish him. Accordingly, a jury could disbelieve the defendant's stated reasons for its adverse employment action.

We find that plaintiff has not met his burden of demonstrating that a reasonable juror could disbelieve the defendant's stated reasons for plaintiff's termination. Plaintiff's complaints focus on the specifics of the company's investigation of his alleged fraud in his dealings with Pasternak. He contends that because the deal he received–a new tractor deck for $269.99–does not seem a particularly good one, he cannot have committed fraud. He also asserts that the company improperly concluded that he had misrepresented his actions during its investigation of the matter. Plaintiff does not offer, however, any evidence that shows that defendant deliberately ignored evidence that would have proved his innocence. He does not cite to inconsistencies in defendant's explanation that would cause a reasonable juror to question the truth of the defendant's stated reasons for firing him. While Sears may have overreacted to plaintiff's receipt of the tractor deck, plaintiff does not point to any evidence that shows defendant's employees knew that he had not committed fraud but acted to dismiss him anyway. Instead, plaintiff appears to disagree with defendant's stated conclusion that he engaged in fraud. Listening to these arguments, a juror would have to conclude that plaintiff's complaint is with the conduct and results of the investigation that led to his termination, not with any discriminatory intent connected to that decision. No

evidence indicates that Sears's stated reasons for firing plaintiff were different from their real reasons for doing so.

Our purpose here is not to review the employment decisions of defendants–no matter how misplaced. See Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 328 (3d Cir. 1995) (holding that "to discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent.'").[4]  We are instead required to consider whether evidence exists by which a jury could conclude that defendant's explanation for a hiring decision is so inconsistent that it cannot be believed or that discrimination was more likely than not a motivating factor in the decision to fire.

Plaintiff has not presented evidence by which a rational juror could come to the conclusion that the real reason for firing plaintiff was his age.  Isolated and rather innocuous comments that referred to plaintiff as an "old-timer" are not evidence by which a jury could determine that the stated reason for firing the plaintiff masked defendant's desire to discriminate because of age, especially since these comments

---

[4]The Seventh Circuit Court of Appeals has offered a somewhat different explanation of this standard, which the Third Circuit court quoted approvingly in Brewer: "We do 'not sit as a super-personnel department that reexamines an entity's business decisions.' 'No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA] does not interfere.' Rather our inquiry is limited to 'whether the employer gave an honest explanation of its behavior.'" McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992) (citations omitted).

were not directly connected to those who made the decision to fire plaintiff or came contemporaneously with that decision. Evidence that a large portion of the repair staff employed by Sears was older than forty would likewise lead a jury to determine that age discrimination was not the real reason for defendant's hiring decision. Plaintiff has therefore offered no credible evidence by which a jury could find that he was fired because of his age. Instead, plaintiff argues with the logic of defendant's decision to fire him. Such quarrels are insufficient to meet plaintiff's burden in this case.

**Conclusion**

For the above-stated reasons, we will grant defendant's motion for summary judgment in this case.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL BERKO,** : | No. 3:06cv122 |
| **Plaintiff,** : | |
| : | (Judge Munley) |
| **v.** : | |
| : | |
| **SEARS, ROEBUCK AND CO.,** : | |
| **Defendants** : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 26th day of September 2007, the defendant's motion for summary judgment (Doc. 16) is hereby **GRANTED**. The Clerk of Court is directed to close the case.

                                                     **BY THE COURT:**

                                                     **s/ James M. Munley**
                                                     **JUDGE JAMES M. MUNLEY**
                                                     **United States District Court**